The next argued case is No. 18-1281, Corradini v. Secretary of Veterans Affairs, Mr. Carpenter. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Frank Corradini. This case is controlled by this Court's decision in O'Brien, which affirmed the precedential opinion of the VA General Counsel, which correctly interpreted the meaning of the provisions of 3.340C as it relates to what is barred from entitlement to service-connected compensation and what is not. Specifically, that a congenital defect is not compensable because that defect is static and does not change. The General Counsel also correctly distinguished that a congenital disease is distinguishable and is compensable because that disease is capable of improvement as well as worsening. That's precisely what we have in this case and what was incorrectly construed and understood by the Veterans Court to be a non-valid allegation of clear and unmistakable error, which comes within this Court's rule of law jurisdiction because that was the rule of law that was set out by the Veterans Court in its decision in Russell v. Principi. Mr. Corradini presented a prima facie legal claim of clear and unmistakable error when he said as a pro se veteran that the condition that he was concluded to have had was misdiagnosed and that term should not be understood in the clinical sense, but misunderstood to be a defect rather than a disease. And what the VA did in its 1971 decision was to simply accept the fact that there was a reference to a nasal deformity that permitted them to find that this was a constitutional or developmental abnormality, which was not compensable. That was a clear and unmistakable error of law. It was contrary to the VA General Counsel's opinion. The VA General Counsel's opinion was binding upon the Board at the time in which the Board reviewed Mr. Corradini's request for revision of that 1971 decision. Can you define what the error of law here is? The error of law is finding that, as the Veterans Court said, that this was a mere disagreement with the facts. This was not a mere disagreement with facts. This was a challenge to the legal question of whether or not what Mr. Corradini suffered from in terms of a nasal deformity was a congenital defect or a congenital disease. And the Board did not make the analysis that is required by the VA General Counsel's opinion that they must determine whether or not that is a disease or a defect that has a congenital basis. If it is a congenital disease, then it is entitled to compensation. If it is a congenital defect, then it is not entitled to compensation under that regulation. And this Court in O'Brien made that clear that the VA General Counsel had correctly interpreted that VA regulation. This VA regulation does not have a statutory predicate. This is a regulation that was written by the Secretary to exclude certain conditions, which are identified in part as being a congenital defect. And the congenital defect was distinguished by the VA General Counsel from a congenital disease. And as a matter of law, Mr. Corradini was entitled to challenge whether or not the VA, in its 1971 decision, correctly determined that he was not entitled, as a matter of law, to compensation for his nasal deformity. He was entitled to that compensation under this Court's decision in O'Brien. The Veterans Court made a clear error of law when it concluded that Mr. Corradini was merely expressing a disagreement with the way in which the evidence was weighed in 1971, and that that may not, as a matter of law, constitute a clear and unmistakable error. What Mr. Corradini presented was, in fact, a question of law. Whether or not his condition was a defect under law or a disease under law. And that is controlled by this Court's decision in O'Brien and controlled by the VA General Counsel's opinion, which the Board was bound by statute to have followed and they chose not to. The Veterans Court was incorrect when it made the determination that this matter could be affirmed on the basis that the allegation made by Mr. Corradini, in his allegation of clear and unmistakable error, was not a sufficient legal basis for a clear and unmistakable error revision because it was a mere disagreement with how the facts were weighed. I'll reserve the balance of my time. There's no further questions from the panel. Well, let's hear from the other side. Thank you. Ms. Cole. Thank you. May it please the Court. This Court should dismiss Mr. Corradini's appeal for lack of jurisdiction because he challenges the application of the rule of law established in Russell for Q claims to the facts of his case, which is a matter outside the Court's jurisdiction. Alternatively, the Court should affirm the Veterans Court's holding, affirming the dial of Mr. Corradini's Q claim. Now, with respect to jurisdiction, this Court has made clear in the Wilsey case that, although the Court does have jurisdiction to consider whether Russell was applied to the question of whether there is Q, the Court made very clear that it does not have jurisdiction to consider whether the application of Russell to the facts of the case was correct. And that's what Mr. Corradini challenges here. Now, in Wilsey, the Court did take jurisdiction because there, although the Veterans Court gave passing mention to the Russell standard, it really didn't apply the three-step test to the facts of this case. It just, in a summary fashion, denied the Q claim. By contrast, here the Veterans Court went through the Russell analysis. Mr. Corradini alleged Q based on two errors of law. He claims that the regulation governing congenital defects and the statute governing the presumption of soundness was incorrectly applied. And the Court analyzed that. It found that the Board fully considered the evidence and concluded that the regional office denied the claim because it appeared to be a congenital defect. And any disagreement with how the evidence was weighed was not the basis for a Q claim. Can I ask you this? Sometimes we, in our continuing effort to draw this line between what might be a question of law and what might be either a factual question or an application, I think we ask the question, is there some essentially intermediate interpretive principle that really ought to have been paid attention to but wasn't in the Veterans Court? And so that idea as applied here would be that something like a congenital defect is a condition that, and I'll finish that sentence, whereas a congenital disease is a condition that something else, and I thought I heard Mr. Carpenter talk about that in terms of whether it is subject to change over time from conditions in the world. But is there something like that going on here or not? No. So Mr. Corradini, the question he raises, whether or not the facts support it being a congenital defect versus a congenital disease, that's your standard application of law to facts, and the court would lack jurisdiction. The only way the court could have jurisdiction would be to consider whether the rule of law for analyzing Q claims established in Russell was not applied, not whether it was incorrectly applied to the facts but whether it was simply not applied. And here the Veterans Court went through the three steps. Is there some rule of law not the kind that's stated in Russell itself but rather in the interpretation of the defect, congenital defect regulation? So if, for example, the regulation has said congenital defect and there had been an interpretation by the general counsel or something that said that requires consideration of whether this is the kind of condition that would change over time. I'm not saying. If there had been something like that and then he could come in, Mr. Carpenter could come in and say the Veterans Court never dealt with that question. So it wasn't, in fact, applying the correct legal standard. Is there something like that going on in this case or is there not essentially any asserted interpretation of the defect regulation that was disregarded? Right. There is no interpretation here of 38 CFR 3.303C. He relies on the O'Brien case. In the O'Brien case, the court did note, and this is based on decisions of the Office of General Counsel within the VA, that there is a distinction between congenital defects and congenital diseases. And whereas defects tend to be relatively stable over time, diseases can progress. So they can get better or they can get worse. And O'Brien stands for the proposition that the presumption of soundness can apply to congenital diseases. But this court has not determined that that's a rule of law. Again, in We'll See, in 2002, the court's jurisdiction number, 7292A, was amended such that now the court has jurisdiction based on the rule of law. But again, in We'll See, the court specifically found that Russell provides a rule of law for Q, such that it did have jurisdiction. This court has never found, not in the O'Brien case either, that there is a specific rule of law with respect or a certain test in determining whether something is a congenital defect versus a disease. There's simply the regulation that states that congenital defects are not disabilities under the law, but there's no rule of law for determining when something is a congenital defect versus a congenital disease, such that the court would have jurisdiction to consider that. That's just a challenge to the application of the law to the facts. And so the court here lacks jurisdiction. Now, it's important to note that the regional office decision that's being challenged is pre-1990. And per the Natalie case, which is actually quite factually similar, this court has found that the regional office does not need to articulate the distinction between a defect and disease and finding that it's a disability under the law, the court will presume that the regional office applied the correct standard and analyzed the facts correctly. And that's precisely what happened in this case. If you look at the decision from 1971, there was a doctor on the board there. He looked at the evidence of record, which noted that there's a congenital deformity. That was from the operation in 1970 that existed prior to service. And he found that to be a congenital defect. So certainly reasonable minds could differ as to whether or not that suggests a congenital disease versus a congenital defect. But that's not the standard for Q. The standard needs to be that the error is undebatable and that no reasonable adjudicator could weigh the evidence the way the adjudicator did. And the error here is not undebatable. As I noted here, there's no rule of law. The court went through the steps in Russell. It noted that there was no error of law. It applied the law to the facts as they existed at the time. And it found that any error here would be harmless. So unlike in Wilsey, where the court did not go through that analysis, here the court did, and so it lacks jurisdiction. And as I noted, to the extent the court finds that there is jurisdiction, the court should affirm the decision in the Veterans Court. Because, again, the standard is not whether reasonable minds could differ and find that it is a disease versus a defect. The standard is whether any error is undebatable, and it's not here. Now, if the court doesn't have any further questions, I respectfully request that... Mr. Carabinieri, tell us exactly the rule of law you would like us to pronounce. The rule of law is articulated in the Russell case, specifically that in order to revise on the basis of an allegation of clear and unmistakable error, it is necessary to conform the true state of the facts or the law that existed at the time of the original adjudication. That did not happen here. Contrary to what was just suggested by the government, there was no statement by a doctor on the rating board. There was, in fact, only a statement that there was a nasal deformity. There was no characterization that there was a congenital deformity, and that is what was required by the law that existed at the time. The law as existed at the time was interpreted by the VA General Counsel... What about the clinical record? That's what I'm talking about. Didn't it say congenital? No, it did not, Your Honor. It said a nasal deformity. It doesn't say... I believe you'll find that in the record at Appendix 34. I guess I'm looking at A69. 69, sorry. This is the clinical record post-op in 1970. That was a determination... EPTS, which I think everybody agrees stands for Existed Prior to Service. This was a document that was a clinical record that was created by the medical board post-surgery. This was an analysis made... I guess it's signed by the attending physician. That's what it says at the bottom, Box 40, Field 40. Dated December 7, 1970, which I take it was just days after the operation. I'm trying to find a date. I don't see it. The operation took place December 1, 1970. That's correct, Your Honor. And then here's the post-op clinical record signed by the attending physician a few days later. Okay. Assuming that that is true, Your Honor, that determination is not a medical determination, but a legal determination under the provisions of the VA General Counsel's opinion. That the characterization of something as being congenital requires a determination as to whether or not it is a congenital defect or it is a congenital disease. If it is a congenital disease, then it is entitled to compensation. And that was the error of law that was made in the allegation that was made by Mr. Corradini in 2010 when he made his request for revision. But if I could continue in relationship to the assertion vis-a-vis this court's decision in Natalie. The circumstances here are not at all comparable to this court's decision in Natalie. Mr. Corradini did not, as Mr. Natalie did in his case, allege that the rating decision had not explained its reasons or basis. That was the allegation made in Natalie. That's not the allegation made here. The allegation made here was he didn't have a defect. He had a disease. The disease was compensable and he was entitled as a matter of law to compensation because he did not have a demonstrated defect. And that medical report, referred to you by Judge Shin, is not dispositive of the issue under the VA General Counsel's opinion. And that VA General Counsel's opinion is retroactive in applying to how the analysis should have been made in 1971 and was not made. The critical difference between what was presented by the government in its argument and what is presented by Mr. Corradini and was incorrectly understood by the Veterans Court is that there is a difference at law between the allegation of clear and unmistakable error made in the first instance by Mr. Corradini and the averment of error made by his counsel at the Veterans Court. That averment of error is to a clear error of law made by the board. And the clear error of law made by the board was the failure to consider whether the correct facts were before the VA in 1971 based upon the VA General Counsel's opinion that the board was bound by. What the Veterans Court did was to leap back to the underlying allegation rather than to look to the averment of error that was made in the board's decision. The board, or excuse me, the Veterans Court has clearly stated in a precedential opinion, Archer v. Principi, that the Veterans Court does not review de novo the underlying allegations of Q. And that's precisely what the Veterans Court did in this case which is contrary to the rule of law established in Russell. Excuse me, unless there's further questions from the court, I will move on. Thank you very much. Thank you both. The case is taken under submission.